Stephen and Charlene **BARRON,**
Respondents,

v.

**HENNEPIN COUNTY, Relator.**

No. C1–91–2013.

Supreme Court of Minnesota.

Aug. 21, 1992.

---

9. The injuries inflicted on J.L.H. by C.H. were not a result of J.L.H.'s mental distress.

Michael O. Freeman, Marilyn J. Maloney, Minneapolis, for relator.

Earl H. Cohen, Minneapolis, for respondents.

COYNE, Justice.

Certiorari on the relation of Hennepin County to review an order of the Minnesota Tax Court reversing the county assessor's denial of the application of respondents Stephen and Charlene Barron for tax valuation under the Minnesota agricultural property tax law, Minn.Stat. § 273.111, more commonly known as the green acres statute. We reverse.

The Barrons are the owners of approximately 20 acres of open land located in Medina, Minnesota. The property was purchased for $160,000 and was originally part of a horse farm that had been divided and sold as lots of 5 to 20 acres in size. The property is presently zoned residential and is situated in a neighborhood considered to be "upper bracket." In 1987 the Barrons constructed a home later described as "upscale" for approximately $280,000. The home occupies, with its yard space, one acre of the property and contains two fireplaces, an attached three-car garage, an in-ground swimming pool and is serviced by an asphalt drive from the main road. The Barrons have continually occupied the property and the home since construction was completed, and they have no other residence within or outside of Minnesota.

In 1988 the Barrons planted one-half of the land not occupied by the home or yard space in grass hay and the other half in oats and alfalfa. The oats and alfalfa crops failed because of drought, but the grass hay produced income during the year of $650. In 1989 the taxpayers planted the same crops, this time producing total income of $1,150. In 1990 the production generated $2,850 in income.

The local county assessor inspected the property in 1990 and determined that, despite the agricultural use, the primary or principal use of the property was as "residential homestead." In comparison of the agricultural use with the residential use, the assessor found the agricultural use to be insignificant. After the Barrons filed a green acres application, the property was reinspected by appraisers dispatched from the Hennepin County Assessor's Office. It was then determined that green acres classification would not be appropriate because of the primary use of the property as a "residential homestead." The application was denied and the taxpayers appealed to the tax court.

The tax court reversed the denial of the application, concluding that there is "no requirement in the statutes that classification as agricultural property in accordance with section 273.13 is a requirement to the granting of the Green Acres classification under section 273.111." It ruled that, as a matter of law, the "subject property qualifies as agricultural land for the purposes of Minn.Stat. § 273.111 in the January 2, 1989 assessment." On certiorari, we are called upon to determine whether the tax court properly restricted its inquiry to a consideration of the elements of section 273.111 without regard to the indicia of classification of section 273.13.

The green acres statute, Minn.Stat. § 273.111, was designed to provide significant property tax relief to promote the continued use as agricultural property of the land "exclusively devoted to agricultural use," Minn.Stat. § 273.111, subd. 3(a), and located on the fringes or amidst expanding urban areas. We identified the "essence" of the legislation in *Elwell v. County of Hennepin*, 301 Minn. 63, 66, 221 N.W.2d 538, 541 (1974) to be

[T]hat farmland, if it meets the requirements of the act, will be valued for tax purposes solely with reference to its agricultural use, which may not necessarily be the same value it would have if other potential uses for the land were considered by the assessor.

Qualification for the financial benefits and protections occasioned by this special tax status [1] permits farmland owners to avoid forced sales, subdivision of their farm property or urban development.

 The taxpayers have suggested that the green acres legislation, standing alone, provides a sufficient basis by which their property might qualify for this special tax status. Minn.Stat. § 273.111, subd. 3(a) provides:

Real estate consisting of ten acres or more * * * shall be entitled to valuation and tax deferment under this section only if it is actively and exclusively devoted to agricultural use as defined in subdivision 6 and * * * is the homestead of the owner.

Subdivision 6 provides:

Real property shall be considered to be in agricultural use provided that annually: (1) at least 33⅓ percent of the total family income of the owner is derived therefrom, or the total production income including rental from the property is $300 plus $10 per tillable acre; and (2) it is devoted to the production for sale of agricultural products as defined in section 273.13, subdivision 23, paragraph (e).

Forage and grains, the products grown on the property at issue here, are included in the definition of agricultural products contained in section 273.13, subd. 23(e).

The county, on the other hand, urges the court to import to the green acres legislation the definition of "agricultural land" contained in Minn.Stat. § 273.13, subd. 23(c), which provides as follows:

Agricultural land as used in this section means contiguous acreage of ten acres or more, primarily used during the preceding year for agricultural purposes. Agricultural use may include pasture, timber, waste, unusable wild land, and land included in state or federal farm programs. 'Agricultural purposes' as used in this section means the raising or cultivation of agricultural products.

Minn.Stat. § 273.13, subd. 23(c).

While we have addressed the purpose and application of the green acres statute on prior occasions,[2] we have neither characterized it nor construed it within the broader context of this state's system of property taxation. In that regard, we point out that all real property in this state is comprehensively classified for tax purposes pursuant to Minn.Stat. § 273.13. It would seem to be fundamental that the subject property then must first satisfy the broad definition of "agricultural land" to qualify for the legislatively identified exception for the valuation [3] of that agricultural property. The tax court itself has indicated on a number of prior occasions that property must be classified as agricultural land before the statutory requirements contained in the green acres statute will be applied.[4]

1. Section 273.13 relies on the market value of the land in question to set tax rates. As the market value of agricultural land, a market value based on sales data from the immediately preceding year, goes up, so does the amount paid in property taxes. *See* Minn.Stat. § 273.11, subd. 10. Property that qualifies for green acres status, however, is taxed based on its use, not on its market value. Section 273.111 also allows payment of special assessments for such things as sewer, water, and utility services to be deferred indefinitely. The financial benefits are clear: the development value of the land is not taken into account and the owner is not required to contribute to the special assessments that accompany continued development. In the case at hand, the resulting tax reduction for taxes payable in 1990 is $2,769.05.

2. *See, e.g., Reiss Greenhouses, Inc. v. County of Hennepin,* 290 N.W.2d 785 (Minn.1980); *Elwell v. County of Hennepin,* 301 Minn. 63, 221 N.W.2d 538 (1974).

3. While Minn.Stat. § 273.11 generally governs the valuation of property, the legislature excepted "certain agricultural real property" from the general system of ad valorem property taxation to effect an equitable basis for taxation "through appropriate taxing measures." Minn.Stat. § 273.111, subd. 2.

4. In *Prescott v. County of Beltrami,* No. C3–88–0492, 1988 WL 82050 (Minn.Tax Court, Small Claims Division filed July 19, 1988), the court stated that "Green acres classification is appropriate only where the property is classified as

Under the statutory scheme, the county assessor is primarily responsible for valuation of individual parcels of property, subject to review by local, county and state boards and ultimately by the commissioner of revenue. In *Summit House Apartment Co. v. County of Hennepin*, 312 Minn. 358, 362–63, 253 N.W.2d 127, 129 (1977), we discussed that responsibility:

> Since the assessor has primary responsibility for ascertaining taxable value, it logically follows that the task of classifying property is an integral part of this function. * * * The task of classification also involves a factfinding responsibility and is not * * * simply an administrative calculation of the appropriate tax that may be performed by the auditor. Whether a particular [piece of property] qualifies for [a particular classification] clearly depends on a wide range of factual judgments concerning compliance with specified statutory criteria.

The "primary use" test incorporated in Minn.Stat. § 273.13, subd. 23(c) implies an examination of the specific nature of the property and the use or multiple uses to which that property has been put, together with a subjective balancing of those relative uses.

■ Upon review of the record submitted, it is our view that the assessor properly concluded that the primary use of the subject property was as a "residential homestead." While 19 out of the 20 acres of the parcel are used for agricultural purposes, the crops have produced almost insignificant income when compared with the valuation of the homestead situated on the remaining acre. Certainly, the farmland preservation purposes and the spirit of the agricultural property tax law would not be furthered by its application to property of this nature.

A procedural matter and its disposition by the tax court deserves comment. The county timely filed its post-trial alternative motion for amended findings of fact or for a new trial as required by Minn.R.Civ.Pro. 59.03, but did not serve its memorandum of law in support of the motion within the 15–day period. While the tax court addressed and decided the motion on its substantive merits, it erroneously concluded, in reliance upon Minn.R.Civ.Pro. 6.04, that by failing to timely serve the supporting documents, the county waived its right to seek amended findings. By timely filing its post-trial motion, the county satisfied the jurisdictional requirements of Rule 59.03. *See Rieman v. Joubert*, 376 N.W.2d 681 (Minn. 1985). When the county failed to timely file necessary supporting documents, it became a matter of the tax court's discretion to accept and consider the contents of those documents or to reject them.

Finally, in reversing the decision of the tax court, we reject the alternative request by the taxpayers for an award of attorney fees and costs.

Reversed.

---

agricultural and meets the income requirements imposed." *See Carlson Realty Co. v. County of Hennepin*, No. TC–7592, 1989 WL 57683 (Minn. Tax Court filed May 31, 1989) ("[T]he threshold test for agricultural classification is found in

Minn.Stat. § 273.13, subd. 6 (1986), before Green Acres tax deferment treatment may be considered."); *see also Soshnik v. County of Hennepin*, No. TC–6930, 1988 WL 144395 (Minn. Tax Court filed Dec. 22, 1988).