**Barbara A. RUBERTO, et al., Relators,**

v.

**COUNTY OF WASHINGTON,**
**Respondent.**

**No. C1–97–436.**

Supreme Court of Minnesota.

Dec. 18, 1997.

---

James C. Backstrom, Dakota County Atty. by Kenneth A. Malvey, Asst. County Atty., Hastings, for respondent.

## OPINION

GARDEBRING, Justice.

This case arises in the context of Minnesota's Green Acres scheme for taxation of agricultural property in high development areas, Minn.Stat. § 273.111 (1996). Relators appeal from a decision of the Minnesota Tax Court, which concluded that Washington County's failure to provide relators with the statutorily required notice of an increase in the estimated market value of their property does not invalidate the county assessor's assessment of estimated market value or the calculation of payback taxes pursuant to Minn.Stat. § 273.111, subd. 9.

"Green Acres" is the terminology used for land which has been classified as agricultural property and is used primarily for agricultural purposes. *See* Minn.Stat. § 273.111, subds. 2–3, 6. "The green acres statute * * * was designed to provide significant property tax relief to promote the continued use as agricultural property of the land 'exclusively devoted to agricultural use.'" *Barron v. Hennepin County*, 488 N.W.2d 290, 291 (Minn.1992) (citation omitted). The statute provides that it is the policy of the state to "equaliz[e] tax burdens upon agricultural property" through a mechanism to value agricultural property without reference to non-agricultural factors and to defer taxes that might otherwise be due, until the use of the property changes. Minn.Stat. § 273.111, subds. 2–9. Such deferred taxes are commonly referred to as "payback taxes." *See id.* at subd. 9. Payback taxes are set at an amount equal to the difference between taxes based on the "taxable market value," which is based only upon the property's agricultural classification, and taxes based upon the "estimated market value," which takes into account non-agricultural factors, but the payback taxes are levied for only the last three

Jeanne E. Kass, Oakdale, for relators.

years that the property was taxed under the Green Acres tax scheme. *Id.*

Minnesota's ad valorem property tax scheme provides that property owners should receive annual notices of the market value of the subject property, pursuant to Minn.Stat. § 273.121 (1996). For owners of Green Acres property, the notice should reference both the taxable market value and the estimated market value. Minn.Stat. § 273.111, subd. 5. *See also* Minn.Stat. § 272.03, subd. 8 (1996).

Barbara A. Ruberto and Thomas G. Armstrong (relators) are brother and sister who, in 1976, inherited approximately 41 acres of property in Washington County, including the property at issue in this case. Throughout relators' ownership, the subject property has been classified as agricultural, non-homestead property and has been enrolled in the Green Acres valuation and tax deferment program. For the years from 1984 to 1993, the taxable market value of the property was $20,900, and the relators' taxes were based upon that valuation. Relators' 1984 tax statement, which indicated an increase in the estimated market value of the subject property from $19,700 to $20,900, was the only notice of an increase in the subject property's estimated market value that relators received until March 1995. Prior to that time, relators received tax statements that showed the taxable market value (the Green Acres value), but did not show the increase in the estimated market value.[1]

In March 1995, relators received their annual property tax statement, which reflected an increase in the estimated market value of the subject property to $395,400, but they did not receive the notice required by Minn.Stat. § 273.121. Relators did not appeal this valuation to any county administrative board or in any court action until December 1995, when they were negotiating the sale of the property. Relators sold the property in January 1996 for $548,359. At that time, relators were assessed the payback taxes authorized by the Green Acres statute, in the amount of $22,680.

Relators paid the payback taxes, but then appealed to the tax court, making both statutory and constitutional arguments. They argued: (1) that Washington County's failure to provide notice of an increase in the estimated market value, as required by Minn. Stat. § 273.121, deprived the county of the ability to collect the payback taxes, (2) that the 1995 estimated market value was calculated pursuant to the wrong statute, and (3) that the proper estimated market value was $20,900, the same amount as the taxable market value. Relators also argued that the county's failure to provide the statutorily required notice deprived them of due process and that they were denied equal protection and uniformity of taxation pursuant to the United States and Minnesota Constitutions, because the amount assessed as the estimated market value was excessive when compared to other agricultural properties.

The tax court concluded that the lack of notice constituted a violation of the statute, but that the proper remedy was an evaluation by the court of the estimated market value for purposes of the payback tax calculation. The tax court concluded that the $395,400 valuation was not excessive, particularly in light of the subsequent sale for $548,359. The tax court did not address relators' remaining arguments. Relators now raise the same statutory and constitutional issues that they argued in the tax court.

This court's review of tax court decisions is governed by Minn.Stat. § 271.10, subd. 1 (1996), which limits review to determining whether the tax court is without jurisdiction, whether the decision is justified by the evidence and law, or if the tax court has committed an error of law. In this case, because there are no factual disputes, we are faced with certain questions of law, which we review de novo. *Homart Dev. Co. v. County of Hennepin,* 538 N.W.2d 907, 910 (Minn. 1995). However, "[t]his court will not disturb the tax court's valuation of property for tax purposes unless the tax court's decision is clearly erroneous." *Equitable Life Assurance Soc'y of the United States v. County of Ramsey,* 530 N.W.2d 544, 552 (Minn.1995).

---

**1.** The tax statements referred to "market value" and "estimated market value" alternatively. However, this figure did not reflect the true estimated market value.

The burden is on the taxpayer to prove that the assessor's valuation is excessive. *Id.* Therefore, the constitutional issues will be reviewed de novo, while the actual valuation provided by the assessor and affirmed by the tax court will be reviewed under the clearly erroneous standard.

## I. Statutory Notice

 Relators in this case ask us to hold that failure to provide the notice required by Minn.Stat. § 273.121 deprives the county of the ability to collect the payback taxes, based on the increased assessment. The notice provision at issue states:

> Any county assessor or city assessor having the powers of a county assessor, valuing or classifying taxable real property shall in each year notify those persons whose property is to be assessed or reclassified that year if the person's address is known to the assessor, otherwise the occupant of the property. The notice shall be in writing and shall be sent by ordinary mail at least ten days before the meeting of the local board of review or equalization. It shall contain: (1) the market value, (2) the limited market value under section 273.11, subdivision 1a, (3) the qualifying amount of any improvements under section 273.11, subdivision 16, (4) the market value subject to taxation after subtracting the amount of any qualifying improvement, (5) the new classification, (6) a note that if the property is homestead and at least 35 years old, improvements made to the property may be eligible for a valuation exclusion under section 273.11, subdivision 16, (7) the assessor's office address, and (8) the dates, places, and times set for the meetings of the local board of review or equalization and the county board of equalization. * * * *Failure to receive the no-*

*tice shall in no way affect the validity of the assessment, the resulting tax, the procedures of any board of review or equalization, or the enforcement of delinquent taxes by statutory means.*

Minn.Stat. § 273.121 (emphasis added).

The plain language of this statute, which provides that "failure to receive notice shall in no way affect the validity of the assessment," seems to dispose of relators' argument. *Id.* Nevertheless, they rely on the other provisions of Minn.Stat. § 273.121, which require:

> (1) that the county assessor *shall* notify those persons whose property is to be assessed or reclassified;
>
> (2) that the notice *shall* be in writing and shall be sent by ordinary mail at least ten days before the meeting of the local board of review or equalization, and
>
> (3) that the notice *shall* contain certain specified information.

From these statutory provisions, relators argue that the notice requirement is mandatory and that the county's failure to comply deprives it of jurisdiction to collect the payback taxes based on the higher estimated market value.

In support of this position, relators also rely on *Countryside Village v. City of North Branch,* 442 N.W.2d 304 (Minn.1989), in which this court held that "the requirement of giving notice of appeal rights is jurisdictional" and reaffirmed our holding in a prior case that failure to mention appeal rights in the required notice for special assessment proceedings "rendered the notice defective and left the town board without jurisdiction." *Id.* at 308. However, the *Countryside* case is clearly not controlling because the notice statute at issue there,[2] which involved special

---

2. In *Countryside,* the notice statute at issue was Minn.Stat. § 429.061, subd. 1 (1988), which provides, in part:

> [T]he clerk, with the assistance of the engineer or other qualified person selected by the council, shall calculate the proper amount to be specially assessed for the improvement against every assessable lot, piece, or parcel of land, without regard to cash valuation, in accordance with the provisions of section 429.051. The proposed assessment roll shall be filed

with the clerk and be open to public inspection. The clerk shall thereupon, under the council's direction, publish notice that the council will meet to consider the proposed assessment. Such notice shall be published in the newspaper at least once and shall be mailed to the owner of each parcel described in the assessment roll. * * * Such publication and mailing shall be no less than two weeks prior to such meeting of the council. * * * Such notice shall state the date, time, and

assessments, does not contain the "savings" language of the notice statute at issue in this case. Furthermore, we stated in *Wegener v. Commissioner of Revenue*, 505 N.W.2d 612 (Minn.1993), that administrative requirements associated with the assessment of market valuations are procedural only and should not have a substantive effect absent evidence of substantial prejudice:

> [A]lthough provisions designed to enforce the collection of the tax or to divest the owner of his property for failure to pay the tax are mandatory, the proceedings in reference to the assessment, computation and levy of taxes are merely directory in nature and in the absence of substantial prejudice, any irregularity in such directory matters will not result in invalidation of the assessment.

*Id.* at 616–17 (citing *Chun King Sales, Inc. v. County of St. Louis*, 256 Minn. 375, 98 N.W.2d 194 (1959) and *Lindahl v. State*, 244 Minn. 506, 70 N.W.2d 866 (1955)). Given the "savings" provision of the statute at issue here, our prior rulings, and the fact that relators have not demonstrated that they have suffered substantial prejudice by the lack of notice, we conclude that there is no defect in the underlying assessment or the amount of payback taxes despite the lack of notice to relators, as required by Minn.Stat. § 273.121.

## II. Improper Valuation Method

■ Relators also argue that once a property has been assessed at the Green Acres value, the payback taxes should continue to be calculated based upon the taxable market value assessment. This argument is simply wrong. Such a conclusion would contravene the language and the intent of the Green Acres statutory scheme. Therefore, we conclude that the county assessor properly utilized Minn.Stat. § 273.111, subd. 9 in assessing relators' property.

## III. Due Process

■ Relators argue that the county's failure to provide the statutory notice of increases in the estimated market value of their property violates their right of due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 7, of the Minnesota Constitution. "At a minimum the due process clause requires that deprivation of property be preceded by notice and an opportunity for a hearing appropriate to the case." *Contos v. Herbst*, 278 N.W.2d 732, 742 (Minn.1979) (citing *Mullane v. Central Hanover Bank & Trust, Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). Although relators did not receive the statutorily required notice regarding the increase in their estimated market value, they did receive their 1995 property tax statement in March 1995, which provided sufficient information to alert them of the change in assessment in time to allow for appeal. Furthermore, relators did appeal after they paid the payback taxes, and the tax court reviewed the assessment by comparing the actual sale

---

place of such meeting, the general nature of the improvement, the area proposed to be assessed, the total amount of the proposed assessment, that the proposed assessment roll is on file with the clerk, and that written or oral objections thereto by any property owner will be considered. The notice must also state that no appeal may be taken as to the amount of any assessment adopted pursuant to subdivision 2, unless a written objection signed by the affected property owner is filed with the municipal clerk prior to the assessment hearing or presented to the presiding officer at the hearing. The notice shall also state that an owner may appeal an assessment to district court pursuant to section 429.081 by serving notice of the appeal upon the mayor or clerk of the municipality within 30 days after the adoption of the assessment and filing such notice with the district court within ten days after service

upon the mayor or clerk. The notice shall also inform property owners of the provisions of sections 435.193 to 435.195 and the existence of any deferment procedure established pursuant thereto in the municipality. In addition, the notice mailed to the owner must include the following information:

(1) the amount to be specially assessed against that particular lot, piece, or parcel of land;

(2) the right of the property owner to prepay the entire assessment and the person to whom prepayment must be made;

(3) whether partial prepayment of the assessment has been authorized by ordinance;

(4) the time within which prepayment may be made without the assessment of interest; and

(5) the rate of interest to be accrued if the assessment is not prepaid within the required time period.

price to the county assessor's estimated market valuation. The actual sale price, which was far in excess of the assessor's estimated market valuation, is strong evidence of the property's market value. Because relators ultimately did receive adequate notice of the change in assessment and had an opportunity to appeal that assessment to the tax court, we conclude that relators have not been denied due process.

### IV. Equal Protection and Uniformity in Taxation

■ Relators also argue that the assessment of payback taxes violates their right to equal protection because the estimated market value, used as the basis for determining the payback taxes, was higher than the value assigned to other agricultural property. In essence, relators assert that a process for determination of payback taxes that takes into account the property's non-agricultural characteristics constitutes an unconstitutional classification.

"We have determined that the state uniformity clause is no more restrictive upon the state legislature's power to tax or classify than the federal [E]qual [P]rotection [C]lause, and that an analysis under equal protection is applicable to the state constitutional challenge." *Lund v. County of Hennepin,* 403 N.W.2d 617, 619 (Minn.1987). Furthermore, controlling law is clear that "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992) (citation omitted).

■ The test for the constitutionality of statutory classifications was enunciated in *Miller Brewing Co. v. State,* 284 N.W.2d 353 (Minn.1979). It consists of three prongs: (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Id.* at 356 (citations omitted).

■ The first prong of this test examines whether there is a legitimate basis for classifying the various properties. The classification must not be unreasonable, arbitrary or capricious. *Apartment Operators' Ass'n v. City of Minneapolis,* 191 Minn. 365, 366, 254 N.W. 443, 444 (1934). "[L]egislative classifications not based on a suspect class nor affecting fundamental interests, as these have been defined by the United States Supreme Court, must be upheld under the equal protection and uniformity clauses unless there is no reasonable basis for the classification." *In re McCannel,* 301 N.W.2d 910, 917 (Minn.1980).

Here, in order to "equaliz[e] tax burdens upon agricultural property" and to "promote the continued use as agricultural property of * * * land exclusively devoted to agricultural use," the legislature created a statutory scheme that requires assessment of agricultural land only on its agricultural characteristics, irrespective of its development potential, *until its use changes.* See Minn.Stat. § 273.111, subd. 2; *see also Barron,* 488 N.W.2d at 291. This classification surely serves a legitimate state interest—the preservation of agricultural land. Further, a tax scheme that encourages such agricultural land preservation through the deferral of taxes that might otherwise be due, taking into account the land's development potential, provides the necessary connection between the classification and the state's interest. Based upon the *Miller Brewing* test, the distinction between land still used for agricultural activities and land about to be taken out of agricultural use runs afoul of no constitutional barriers, either state or federal.

Further, while the statutory classification scheme that distinguishes between agricultural property still in agricultural use from

**300**

other agricultural property, the use of which is about to change, is clearly constitutional, if relators had presented evidence demonstrating that their property had been assessed differently from other properties that were formerly classified as Green Acres property, they could assert an equal protection claim. As previously set forth, the state cannot treat similarly-situated persons or properties differently. *See Nordlinger*, 505 U.S. at 10, 112 S.Ct. at 2331. However, relators have provided no evidence of similarly-situated properties that have been treated differently from their property, i.e., no former Green Acres property that was assessed differently from the process set forth in Minn.Stat. § 273.111, subd. 9. Therefore, the assessment of payback taxes on relators' property presents no equal protection or uniformity in taxation problems.

### V. Conclusion

■ Relators should have received the statutorily required notice. However, failure to receive this notice does not invalidate the assessment of estimated market value or the amount of payback taxes due because the statute requiring notice specifies that lack of notice has no effect on the tax or the assessment upon which it is based. Further, relators have not shown that they have suffered substantial prejudice by the lack of notice. If notice is not provided to Green Acres property owners, it is proper for the trial court, or reviewing administrative board, to determine whether the assessment of estimated market value is excessive at the time the property no longer qualifies for Green Acres tax treatment. In this case, the property was properly assessed pursuant to Minn.Stat. § 273.111, subd. 9 for purposes of levying payback taxes. Finally, relators have not been deprived of their right to due process by the lack of notice, nor have they been deprived of their right to equal protection and uniformity in taxation by the assessment of payback taxes.

Affirmed.