Leonard SCHMIEG, Respondent,

v.

COUNTY OF CHISAGO, Relator.

No. A07–503.

Supreme Court of Minnesota.

Nov. 1, 2007.

Janet A. Reiter, Chisago County Attorney, Kristine Nelson Fuge, Assistant County Attorney, Center City, MN, for Appellant.

Leonard Schmieg, St. Paul, MN, Pro Se Respondent.

## OPINION

PAGE, Justice.

The Chisago County assessor classified a parcel of land owned by Leonard Schmieg as commercial for property tax purposes for taxes payable in 2005. Schmieg appealed the classification to the Minnesota Tax Court. The tax court concluded that the classification was erroneous and ordered that the subject property be classified as agricultural non-homestead under Minn.Stat. § 273.13, subd. 23(b)(3) (2006). In its brief, the county argues that the rental of a billboard located on the southern half of the subject property justified a commercial classification, and that an agricultural classification of the property is not supported by the evidence.[1] For the reasons discussed below, we reverse the decision of the tax court and remand for further proceedings.

The subject property is located in Harris, Minnesota, north of County Road 10 and east of Interstate Highway 35. The property is approximately 41.7 acres in size, and is divided roughly in half by a creek.

Schmieg conducted a variety of activities on the southern half of the property during the time at issue. He maintained 34 beehives for the production of honey and

1. Schmieg did not file a brief in response to the county's arguments.

beeswax, as well as for pollinating crops.[2] The hives had not yet yielded significant amounts of honey, but Schmieg intended to enlarge his operation and had started a business for that purpose. In 2005, the beehives brought in about $200 in income, but also cost Schmieg $1,887 in expenses. Schmieg also raised vegetables and corn on the southern half of the property, along with a small number of tree saplings that he intends to sell when they reach a sufficient height to transplant. In addition, Schmieg leased a billboard on the southern half of the property to 3M Media. The lease called for Schmieg to be paid $3,500 in 2005. The northern half of the property is largely inaccessible due to the creek, which impedes access.

Before it was reclassified, the property had an agricultural classification. According to the county, the reclassification of the property as commercial was justified by the presence of the billboard on the southern half of the property. Schmieg appealed the county's reclassification of the property to the tax court, claiming that the property should have an agricultural classification. After a hearing, the tax court determined that the county's classification of the property was erroneous and ordered that the entire property be reclassified as non-homestead agricultural. This appeal followed.

## I.

■ We review tax court decisions to determine whether the court lacked jurisdiction, whether the court's decision is supported by the evidence and in conformity with the law, and whether the court committed any other error of law. *Jefferson v. Comm'r of Revenue*, 631 N.W.2d 391, 394 (Minn.2001); *see also* Minn.Stat. § 271.10, subd. 1 (2006). We are not bound by

decisions of the tax court. *A & H Vending Co. v. Comm'r of Revenue*, 608 N.W.2d 544, 546 (Minn.2000). Before we will overrule the tax court, however, we must conclude that the court's decision is clearly erroneous-that the evidence as a whole does not reasonably support its decision. *Lewis v. County of Hennepin*, 623 N.W.2d 258, 261 (Minn.2001). When some evidence supports the tax court's factual findings, we may nonetheless reverse those findings if, after reviewing the entire evidence, we are left with a "firm conviction that a mistake has been made." *Montgomery Ward & Co., Inc. v. County of Hennepin*, 482 N.W.2d 785, 788 (Minn. 1992). We review the tax court's legal determinations de novo. *Kmart Corp. v. County of Clay*, 711 N.W.2d 485, 488 (Minn.2006).

■ Under Minnesota's statutory framework, "agricultural land" is defined as "contiguous acreage of ten acres or more, used during the preceding year for agricultural purposes." Minn.Stat. § 273.13, subd. 23(c) (2006). Thus, to determine whether the tax court properly classified the subject property, we must look at how the property was used. Whether land is "used" for agricultural purposes is determined by looking at "the specific nature of the property and the use or multiple uses to which that property has been put, together with a subjective balancing of those relative uses." *Barron v. Hennepin County*, 488 N.W.2d 290, 293 (Minn.1992). "Agricultural purposes" is in turn defined as "the raising or cultivation of agricultural products." Minn.Stat. § 273.13, subd. 23(c) (2006). The statutory list of "agricultural products" encompasses the "production for sale" of "vegetables, forage, grains, bees, and apiary products,"

**2.** The record does not indicate the exact location of the crops pollinated, but it appears that they were not located on the subject property.

as well as "trees, grown for sale as a crop, and not sold for timber, lumber, wood, or wood products." Minn.Stat. § 273.13, subd. 23(e) (2006). To the extent agricultural land is used commercially, the portion of the land used for commercial purposes is to be classified separately. Minn. Stat. § 273.13, subd. 23(f) (2006).

■ The tax court based its classification determination on its finding that Schmieg "used approximately half of his 42 acres of land for his bee keeping operation, including maintaining the hives, as well as using the shed and well house for processing the honey." *Schmieg v. County of Chisago,* No. 13–CV–06–92, 2007 WL 491610, at *3 (Minn. T.C. Feb. 7, 2007). The record, however, does not reasonably support that finding. Although the record indicates that a number of bees were raised on the property, there is nothing in the record suggesting that the beekeeping operation utilized ten contiguous acres for agricultural purposes. Aside from the beehives and the space occupied by the shed and the well house, which occupied a relatively small portion of the property, there is no evidence as to how much of the remainder of the property was used for the beekeeping operation. Further, it is clear from the record that the vegetables and trees grown by Schmieg only took up a small portion of the property. Moreover, the record indicates that at least half of the subject property was unused. Because the record before us does not support the tax court's finding that Schmieg used approximately half of the subject property for his beekeeping operation, we conclude that there was insufficient evidence for the tax court to have concluded that ten contiguous acres were used for agricultural purposes. Thus, we hold that the tax court's classification of the subject property as agricultural was erroneous.

## II.

■ Although we conclude that the record lacks sufficient evidence to support a non-homestead agricultural classification for Schmieg's property, we decline, on this record, to simply reinstate the commercial classification set by the county assessor. Under Minnesota law, an assessor's classification of land for tax purposes is prima facie valid, Minn.Stat. § 271.06, subd. 6 (2006), and the petitioner carries the burden of showing that the classification is incorrect. In normal circumstances, a taxpayer's failure to satisfy his burden of proof would result in the assessor's initial classification being affirmed. On the particular facts before us here, however, deference to the assessor's classification would serve to undermine the statutory classification scheme as a whole.

In this case, the record suggests that the assessor's classification of the property as commercial was based upon our decision in *Barron v. Hennepin County,* which imposed a "primary use" test for determining how property was to be classified. *See Barron,* 488 N.W.2d at 293. According to the county, *Barron's* primary use test mandates a commercial classification of the property because of the income produced by the billboard located on the property, regardless of how the remainder of the property was used. Whether *Barron* guides the classification of Schmieg's property is a question of law we address de novo.

In *Barron,* the classification to be given 20 acres of land—one acre used by a family home, the other 19 planted with crops—was at issue. *Id.* at 291. At the time, the property tax classification statute defined "agricultural land" as "contiguous acreage of ten acres or more, *primarily* used during the preceding year for agricultural purposes." Minn.Stat. § 273.13, subd. 23(c) (1992) (emphasis added). Based

upon the statute's use of the phrase "primarily used," we held that none of the land in question could be classified as agricultural because the crops grown on that land had produced "almost insignificant income when compared with the valuation of the homestead." *Barron*, 488 N.W.2d at 293.

While we have never overturned *Barron*, its applicability today is undermined by the classification statute's current language. After *Barron* was decided, the legislature redefined "agricultural land." Under this new definition, the term "agricultural land" means all land "*used* during the preceding year for agricultural purposes." Minn.Stat. § 273.13, subd. 23(c) (emphasis added). As a result, the "primarily used" language relied on in *Barron* is no longer part of the statutory scheme, and its removal calls into question *Barron's* continued viability.

Moreover, the classification statute clearly contemplates that property may be used for more than one purpose and therefore subject to more than one classification-a possibility not addressed in *Barron*. For example, Minn.Stat. § 273.13, subd. 23(f), provides that, "[i]f a parcel used for agricultural purposes is also used for commercial or industrial purposes, * * * *the assessor shall classify the part of the parcel used for agricultural purposes [accordingly], and the remainder in the class appropriate to its use*." (Emphasis added.) This language is in direct conflict with our holding in *Barron*.

Here, it appears that the assessor's rationale for classifying the entire property as commercial was derived from our holding in *Barron*. But given the language of section 273.13, subdivision 23(f), and the fact that at least some of the subject property appears to be used for agricultural purposes, some for commercial purposes, and some unused, it would seem that commercial classification of the entire property is inappropriate. Therefore, we remand to the tax court for further proceedings to determine the proper classification for the property.

Reversed and remanded for further proceedings not inconsistent with this opinion.