IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| LEROY A. WEHDE and NANCY C. WEHDE, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 111096C |
| v. | ) ) | |
| JACKSON COUNTY ASSESSOR, | ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appeal Defendant's partial disqualification of their property from farm use special assessment for the 2011-12 tax year. The property in question is described in the Jackson County records as Account 10521165 (subject property). Trial in this matter was held by telephone August 6, 2012. Plaintiffs were represented by Christian E. Hearn, Attorney at Law. Defendant was represented by Lorrie Williams, farm and forest appraiser for the Jackson County assessor's office. Leroy Wehde (Wehde) testified for Plaintiffs. Also testifying for Plaintiffs was John B. Jacob (Jacob), a professional apiarist and CEO of Old Sol Enterprises. Testifying for Defendant was John Cacka, former farm and forest appraiser for the Jackson County assessor's office.

## I. STATEMENT OF FACTS

The subject property comprises 39.57 acres, zoned for exclusive farm use, of which roughly half is forested and half is cleared. (Ptfs' Trial Memo at 3; Def's Ex B at 4.) Plaintiffs' tenant, Jacob, testified that he keeps beehives on a small portion of the cleared area on the subject property's southern border. Jacob testified that he erected a temporary fence around the hives to ward off predators, primarily bears.

/ / /

Defendant disqualified all of the cleared half but for the single acre upon which Jacob's apiaries sit (18.97 acres) from its farm use special assessment status on the ground that it is "currently lying idle or [is] no longer in a qualifying farm use." (Ptfs' Amended Compl at 4; Def's Ex B at 1.) Plaintiffs contend that Jacob's beekeeping qualifies as farm use of the remaining 18.97 acres because they are honeybee forage area for Jacob's business.

Jacob testified in detail regarding the nature of his apiculture business. His bees produce honey, but the majority of his revenue is derived from the bees' usefulness in facilitating the cross-pollination of other crops. Orchard owners, particularly growers of almonds and pears, lease his hives during the pollination season because the bees' activity generates larger yields from their trees. Additionally, Jacob sells queen bees nationwide. Jacob testified that these queens are in demand because they are especially bred by Jacob to be resistant to disease, which has been a particular concern to farmers and beekeepers across the country in recent years. (Ptfs' Ex 9 at 2.)

Jacob testified that he keeps between 30 and 300 hives on the subject property at a time, depending on the season. The hives are clustered together near the edge of the property's boundary, both for Jacob's convenience and to minimize bee stings elsewhere (most notably protecting Plaintiffs' grown daughter who lives on the property). Jacob testified that in his opinion the subject property is "one of the best" properties in the area for bee foraging because of its variety of wildflowers, clovers, and blackberries, as well as its wooded area. (Ptfs' Ex 9 at 3.) When questioned by the court, Jacob testified that the trees on Plaintiffs' property include the various species that provide nectar and pollen throughout the year and that the trees are "very productive." According to Jacob, the bees generally forage within a two to seven mile

///

radius of their hives. Jacob also testified that Plaintiffs' meadow has varying forage all summer because of the numerous varieties of wildflowers present.

The subject property is capable of multiple farming uses. Defendant categorizes it as tillable crop land, albeit of the least desirable class. (Def's Exs L at 1; M.) The portion in dispute is flat and its soil is of a type "well suited to irrigated crops" such as "alfalfa hay, small grain, tree fruit, and grass-legume hay." (Def's Exs D at 4; E at 2.) This type of soil is also suited to timber development and may be used for pasture. (*Id.*) Regarding irrigation, Pleasant Creek abuts the property and Plaintiffs have water rights for 14.4 acres. (*See* Def's Ex D at 2-3 (aerial photograph showing Pleasant Creek).) Although the creek runs dry around the Fourth of July each year, Wehde admitted that he has the right to force others upstream to take less water. He does not do so because he is "trying to be a good neighbor."

Plaintiffs' daughter dwells on the subject property in housing described by Wehde as "temporary." She keeps approximately eight goats, thirty chickens, and eleven llamas, which graze freely around the property. (Ptfs' Ex 8.) On cross-examination, Wehde testified that his daughter's animals have free run of the property, and that there is no cross fencing to contain the animals to particular portions of the property (except a small temporary fence right around the beehives). Defendant reports that the daughter described her operation as a "hobby farm." (Def's Ex B at 3.) No evidence has been submitted that she raised the animals with a profit making motive during the 2011-12 tax year. There was testimony from Plaintiffs that the daughter sells and trades some of her llamas, and that they are also used "for food." Wehde further testified that bees are the "primary" use of the property, and that they pollinate the flowers which in turn provide feed for other animals. He further testified that while it would be

/ / /

possible to grow alfalfa, it would be very difficult because there's too much granite in the soil and not enough water.

## II. ISSUE

The issue presented is whether 18.97 acres of tillable land may be disqualified from farm use special assessment under ORS 308A.113(1)(a) where the sole profit seeking farm use of the land is honeybee forage.[1]

## III. ANALYSIS

Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

Finding that agriculture "contribute[s] significantly to Oregon's character and economy[,]" the legislature enacted the farm use assessment statutes as a way of "providing the means for agriculture to continue and prosper * * *." ORS 308A.050. To that end, "[a]ny land that is within an exclusive farm use zone and that is used exclusively for farm use shall qualify for farm use special assessment * * * unless disqualified under other provisions of law." ORS 308A.062(1). A farm property may be disqualified from special assessment by the assessor "upon the discovery that the land is no longer being used as farmland[.]" ORS 308A.113(1)(a).

"Farm use" is defined as "the current employment of land for the *primary* purpose of obtaining a profit in money" by conducting various specified agricultural activities, including "[f]eeding, breeding, managing or selling livestock, poultry, fur-bearing animals or honeybees or the produce thereof." ORS 308A.056(1)(b) (emphasis added). This farm use must be "active, purposeful, directed use of the land." *Everhart v. Dept. of Rev.* (*Everhart*), 15 OTR 76, 79

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2009.

(1999). Furthermore, the farming must be for profit on the open market rather than for a family's own use, although qualified farming does not preclude the property owner from using a portion of the farm crop or product for personal consumption. *Id*. at 80 ("[s]mall operations such as raising chickens for family use or a few pigs to trade with a neighbor" do not qualify).

Despite the general requirement of *Everhart* that farm use be "active, purposeful, [and] directed," this court has held that honeybee foraging can be a sufficiently intensive use of a marginal property to qualify it for farm use special assessment. *Young v. Jackson Cty. Assessor* (*Young*), 17 OTR-MD 78, 82-83 (2002). *Young* concerned an almost 1,700 acre tract of non-tillable land suitable only for cattle grazing or beekeeping, but not both simultaneously because grazing cattle would eat the plants needed by bees before they flowered. *Id*. at 79, 83. Under those circumstances, where any other active farming would have made beekeeping impossible, the court held that the bees' foraging satisfied the definition of farm use under ORS 308A.056(1). *Id*. at 82.

Other jurisdictions that have considered the question have concluded that honeybee foraging on otherwise idle land does not warrant agricultural classification for tax purposes. *See Schmieg v. County of Chisago*, 740 NW2d 770, 773 (Minn 2007) (reversing tax court's agricultural classification for lack of evidence that beekeeping required land beyond that occupied by hives and honey processing shed); *Pizzitola v. Galveston County Cent. Appraisal Dist.*, 808 SW2d 244, 249 (Tex App 1991) (disallowing agricultural classification of acreage around hives because it was "used only by bees to gather pollen and nectar from native plants and trees, and [the plaintiffs] took no action to improve it, cultivate it, or maintain it for beekeeping operations"); *Wyer v. Middletown Tp.*, 16 NJ Tax 544, 548 (1997) (upholding assessor's denial of farmland assessment because bees also forage on neighboring properties and

because there was no evidence that "the amount of honey produced would decrease in any way if [taxpayer's 6.33 acre lot] had no clover and was not suitable for foraging by taxpayer's bees").

In the present case, it is undisputed that the subject property is located within an exclusive farm use zone. Therefore, the provisions of ORS 308A.062(1) and ORS 308A.113(1) apply and the question for the court to decide is whether Plaintiffs' activity on the subject property constitutes "farm use" under ORS 308.056(1)(b).

The court will first examine beekeeping on the subject property, and then the keeping of animals by Plaintiffs' daughter.

A.      *Beekeeping on subject property*

*Prima facie*, the land left open for bee foraging appears to lack "active, purposeful, directed" employment. *See Everhart*, 15 OTR at 79. Photographs submitted by both parties show wide expanses of flat, uncultivated grassland. Therefore, under *Young*, the court inquires whether Plaintiffs have shown that no other farm use of the property is possible without disrupting Jacob's beekeeping operation.

The evidence before the court is insufficient to conclude that the bees' needs prevent Plaintiffs from actively farming. The subject property's soil is reportedly suitable for growing fruit trees, multiple varieties of hay, and small grain, and water is available. While Jacob testified that alfalfa hay was not suitable for honeybee consumption, alfalfa hay does not exhaust the possible uses of this land.

Furthermore, Plaintiffs have not established that the cleared land on the subject property is needed by the honeybees at all. Jacob testified that the bees forage within a two to seven mile radius of their hives. A circle with a two mile radius has an area of roughly 12.5 square miles, or 8,000 acres. The disputed section of the subject property is 18.97 acres (as opposed to 1,700

acres in *Young*), which is 0.2 percent of the bees' minimum foraging range. The loss of at most 0.2 percent of their foraging field seems unlikely to impact the bees, particularly when they are able to extend their range up to seven miles. And, in fact, Jacob testified that the bees already forage over the boundary line and in the wooded area of the subject property.

B.      *Animals kept by Plaintiffs' daughter*

The raising of chickens, goats, and llamas by Plaintiffs' daughter does not constitute a farm use of the subject property because she does not seek "profit in money" from them. ORS 308A.056(1); *see Everhart*, 15 OTR at 80. Plaintiffs assert in their Complaint that the llamas and goats are raised for food, and the court finds that this is the primary purpose in keeping them. (Ptfs' Amended Compl at 3.)

At trial, Plaintiffs argued that the llamas were part of the beekeeping operation because they helped to chase away bears and because they improved the bee forage by eating taller grasses. Plaintiffs did not allege that their daughter raised llamas primarily to support Jacob's beekeeping, or that she coordinated with him in any way. To the contrary, Plaintiffs alleged in their Amended Complaint that the llamas were raised for food. Therefore, helpful as llamas may be against bears, the court finds that protecting the hives is not the "primary purpose" Plaintiffs' daughter has for keeping them. *Cf.* ORS 308A.056(1).

Finally, Plaintiffs argued at trial that the chickens kept by their daughter supported the bee operation by eating the larvae of bugs that would otherwise attack queen bees. Again, no allegation was made that this was the primary purpose for which the chickens were kept, and the court finds otherwise. Additionally, testimony regarding this form of pest control was vague and did not address questions such as the amount of acreage cleared of pests by the chickens and the

/ / /

amount of cleared acreage required by the bees. For these reasons, the court finds that Plaintiffs' daughter's animal keeping does not qualify as farm use under the statute.

The court therefore concludes that the disputed 18.97 acres of the subject property do not qualify for farm use special assessment because "active, purposeful, directed use of the land" is absent. *See Everhart*, 15 OTR at 79.

### III. CONCLUSION

After carefully considering the evidence before it, the court concludes that Plaintiffs have not shown that the disputed acreage is being used for farming under ORS 308A.056(1). Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of October 2012.


_____
DAN ROBINSON
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*


*This document was signed by Magistrate Dan Robinson on October 11, 2012. The Court filed and entered this document on October 11, 2012.*